IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| TERRANCE AND DARNIESHIA MORRIS<br><br>          Plaintiffs,<br><br>   v.<br><br>CITY OF ROCKFORD, ILLINOIS, *et al.*,<br><br>          Defendants. | Case No. 3:20-CV-50384<br><br>Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Terrance Morris and Darnieshia Morris sued Rockford, its police department, and several police officers after Mr. Morris was arrested and charged with two offenses following an altercation at a youth football game. Dkt. 85. Several of their claims were dismissed at the motion to dismiss stage. Dkt. 101. Now, Rockford and Defendant Rockford Police Officer Kenneth Farmer move the Court for summary judgment as to the remaining claims. Dkt. 115. For the following reasons, the Court grants their motion.

**STATEMENT OF FACTS**

Before setting out the background facts, first a word about their origin. "On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). The statements serve a valuable purpose: they help the Court in "organizing the evidence and identifying disputed facts." *F.T.C. v.*

1

*Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). Local Rule 56.1 requires a party seeking summary judgment to file an accompanying statement of facts, with numbered paragraphs and citations to the record supporting those facts. *See* LR 56.1(d). "Factual allegations not properly supported by citation to the record are nullities." *Bolden v. Dart*, No. 11 C 8661, 2013 U.S. Dist. LEXIS 102397, at *5 (N.D. Ill. Jul. 23, 2013) (internal quotations and citation omitted).

The party opposing summary judgment must "admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." LR 56.1(e)(2). To dispute a fact, the party opposing summary judgment must, in its response, "cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." *See* LR 56.1(e)(3). The opposing party's response "may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made." LR 56.1(e)(2). To assert new facts, the opposing party must file its own statement of facts. LR 56.1(b)(3). Facts not otherwise included in the statement of facts may be ignored. *See Cichon v. Exelon Generation Co.*, 401 F.3d 803, 810 (7th Cir. 2005).

If it is not already apparent, the consequence of failing to comply with Local Rule 56.1 is dire: "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *See* LR 56.1(e)(3). The Court is entitled to expect strict compliance. *See Cracco v. Vitran Exp. Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Bay Area Bus. Council, Inc.*, 423 F.3d at 733; *Ammons v. Aramark Uniform*

*Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). None of this is new. Local Rule 56.1 and its predecessor Local Rule 12(m) and 12(n) have existed for decades.

Rockford and Officer Farmer filed a Local Rule 56.1 Statement. Dkt. 117. Mr. and Mrs. Morris, in response, neither admit nor deny the statements in Rockford and Officer Farmer's Rule 56.1 Statement. *See* Dkt. 121. Instead, they offer seven pages of argument, throw in "certain facts" that they believe were "left out," and add "certain facts" needed to "clarify misstatements" by Rockford and Officer Farmer. *Id.* at 1. Whatever purpose they intended their filing to serve, it fails to comply with Local Rule 56.1(b)(3) and 56.1(e). *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643–44 (7th Cir. 2008). To top it off, it does not even respond in "concise numbered paragraphs." *See* L.R. 56.1(d)(1). Thus, the Court will disregard Mr. and Mrs. Morris' response and will rely on Rockford and Officer Farmers' Local Rule 56.1 Statement. *Cichon*, 401 F.3d at 809–10.

Turning to the facts of this case, on October 6, 2018, Rockford police responded to "several calls from multiple persons, reporting a fight involving multiple people" at Rockford Lutheran High School in Rockford, Illinois. Dkt. 117, at ¶¶ 7, 8. According to the calls, "someone had pulled out a gun, causing people to run away." *Id.* at ¶ 7.

Law enforcement arrived at the scene and spoke with multiple witnesses. *Id.* at ¶¶ 9–33. During their investigation, they learned that after a youth football game, there was a heated argument between the visiting football coaches, Mr. Morris and Devorah Clark, and the home team football coach, Dustin Wolf. *Id.* at ¶¶ 11, 16, 21, 30, 34. The argument escalated into a "large fight in the parking lot" near the field.

*Id.* at ¶ 12. Then, Mr. Clark pulled a gun out, pointed it at Mr. Wolf's stomach, and the crowd scattered. *Id.*

One witness, Antionette R. Johnson, stated that before the football game, she was "parked next to a black Acura ILX with Indiana State plates, which was occupied by an adult black male and [an] adult black female." *Id.* at ¶ 22. She saw the male, "dressed in all black, exit the Acura, take a handgun from the trunk of the Acura, placed it in a backpack and walk towards the football field carrying the backpack." *Id.* at ¶ 23. Because Ms. Johnson was afraid of guns, she "started her vehicle and drove home." *Id.* at ¶ 24. After Ms. Johnson heard about the "fight" and that "someone had pulled a gun," Ms. Johnson returned to the scene to speak with law enforcement. *Id.*

Although Ms. Johnson could not identify the individuals that had been in the vehicle, she was able to identify the Acura, which was still parked in the parking lot. *Id.* at ¶ 25.

A search of the Acura's registration number revealed that the car was registered to Darnieshia Morris, Mr. Morris' wife. *Id.* at ¶¶ 26, 27. When an officer then spoke with Mrs. Morris, Mrs. Morris explained that her husband had a concealed carry permit from Indiana and that there was a handgun in the vehicle. *Id.* at ¶ 27. Mrs. Morris gave consent for the officer to search the vehicle, and when the officer searched the vehicle, he recovered a loaded, chambered handgun in a cloth holster from the glove compartment. *Id.* at ¶¶ 27–29.

4

A different officer spoke with Mr. Morris, and Mr. Morris explained that there were "altercations during and after a football game at the school," but denied seeing anyone brandish a weapon. *Id.* at ¶ 32.

After the witness interviews, Lieutenant Bradley Stein determined that a series of show up identifications were needed "so witnesses could identify who argued with Dustin Wolf and who pulled out the gun during the argument." *Id.* at ¶ 35. During the identifications, three witnesses separately identified Mr. Morris as the man who had argued with Mr. Wolf, and four witnesses identified Mr. Clark as the man who had brandished the firearm. *Id.* at ¶ 39.

Following the identifications, Lieutenant Stein called Assistant State's Attorney Joseph Carder and shared the results of the investigation and identifications. *Id.* at ¶ 40. Lieutenant Stein requested authority to "file any relevant felony charges" against Mr. Morris. *Id.* Mr. Carder determined that, based on the investigation, Mr. Morris should be charged with unlawful use of a weapon ("UUW") and mob action, and approved such charges. *Id.* at ¶ 42. Lieutenant Stein then directed Officer Melissa Sundly to place Mr. Morris under arrest. *Id.* at ¶ 44. Mr. Morris was then transported to the Winnebago County Jail. *Id.* at ¶¶ 44–45.

Three days later, on October 9, 2018, Mr. Morris was arraigned before a Winnebago County Court judge and released on bail. *Id.* at ¶ 46. Although he was later indicted, a Winnebago County judge ultimately dismissed the charges in January 2020. *Id.* at ¶¶ 47–48. Mr. Morris does not know why the judge dismissed the charges against him. *Id.* at ¶ 48.

Officer Farmer's only involvement in this incident was interviewing Mr. Clark, calling Mr. Carder to request authority to file charges against Mr. Clark, and arresting Mr. Clark. *Id.* at ¶¶ 10, 40, 44. He never spoke with, or otherwise communicated with, Mr. or Mrs. Morris during "any time relevant to this case." *Id.* at ¶ 51.

## PROCEDURAL POSTURE

Mr. and Mrs. Morris went on to file a blunderbuss thirty-five count lawsuit. The Court dismissed many of the thirty-five claims at the motion to dismiss stage. Dkt. 101. The claims that remain against Officer Farmer are: Count VII (42 U.S.C. § 1983 False Arrest/Unlawful Detention); Count VIII (Due Process); Count IX (Conspiracy); Count X (Malicious Prosecution); Count XI (Intentional Infliction of Emotional Distress); and Count XII (42 U.S.C. § 1983 Failure to Intervene). Dkt. 85, ¶¶ 52–85; *see* Dkt. 101. The claims that remain against Rockford are: Count XXXIII (Conspiracy); Count XXXIV (Malicious Prosecution); and count XXXV (Intentional Infliction of Emotional Distress). Dkt. 85, ¶¶ 184–99; *see* Dkt. 101. At a prefiling conference, the Court asked counsel for Mr. and Mrs. Morris whether they intended to voluntarily dismiss any of the remaining counts. (For example, one would think that a conspiracy count when only one defendant remains would be a good candidate for voluntary dismissal.) Counsel declined.

Mrs. Morris is a named plaintiff to the lawsuit, but only requests relief as to the failure to intervene and intentional infliction of emotional distress claims. *See* Dkt. 85, at ¶¶ 71–79, 80–85, 195–99.

6

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if, when viewing the record and all reasonable inferences drawn from it in the light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). The burden to show that no genuine issue of material fact exists falls on the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Beardsall*, 953 F.3d at 972. If the movant meets this burden, to survive summary judgment the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

## ANALYSIS

Before diving into the arguments concerning each of the remaining claims, the Court first addresses whether Mrs. Morris has standing to bring her intentional infliction of emotional distress and failure to intervene claims. Dkt. 85, at ¶¶ 71–79, 80–85, 195–99. As the Court indicated in its October 13, 2022, Order, the Court has concerns as to Mrs. Morris' standing. Dkt. 101, at 1 n.1. The Court fully anticipated that, in response to the Court raising this issue, Mr. and Mrs. Morris would file a Third Amended Complaint addressing the Court's concern. But none was filed.

Now, Rockford and Officer Farmer argue that Mrs. Morris does not have Article III standing to bring her claims. *See* Dkt. 116, at 18–19. They claim that she has not "alleged facts to plausibly suggest that she has standing to assert any claims based on the incident" involving Mr. Morris. *Id.* at 19. In response, Mr. and Mrs. Morris argue, without citing to a single piece of evidence or legal authority, that:

> No Probable Cause existed to question or detain Mrs. Morris about facts about an incident related to Mob Action, Aggravated Unlawful Use of a Weapon and Disorderly Conduct. Mrs. Morris civil rights were violated in front of her husband and children. Like everyone else on the scene that day, she was a participant. She was made a witness against her own husband by the Police officers on behalf of the City of Rockford to manufacture the charges that were brought against Mr. Morris. Without Mrs. Morris, there would be no charges against Mr. Morris.
>
> She has suffered emotional distress because her children were present, her husband was arrested in front of them, the family had to go back and forth to court for over a year and when the state's attorney and prosecutor realized that the charges were fabricated, they dismissed the case. There is a dispute as to the charges and there is a dispute as to whether there was probable cause. A jury viewing this evidence can conclude that absent probable cause, the Defendants' motion for summary judgment fails.

Dkt. 120, at 13.

Federal courts are courts of limited jurisdiction. *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 550. Article III of the Constitution "restricts a federal court's jurisdiction to resolving only 'Cases' and 'Controversies.'" *Id.* (quoting U.S. Const. art. III, § 2). To ensure that a plaintiff is bringing a dispute which is "appropriately resolved through the judicial process," the plaintiff must have standing to bring his or her claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citation omitted). To establish Article III standing, a plaintiff must

8

show: (1) "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–561 (internal quotations and citation omitted). An injury in fact is one that is "concrete and particularized" and "actual or imminent, not "conjectural" or "hypothetical." *Id.* (cleaned up).

At the summary judgment stage, the plaintiff must "supply evidence of specific facts that, taken as true, show each element of standing." *Wadsworth v. Kross, Lieberman, & Stone, Inc.*, 12 F.4th 665 (7th Cir. 2021) (cleaned up).

In evaluating the facts properly before the Court, Mr. and Mrs. Morris have failed to show that Mrs. Morris suffered an injury in fact. *Lujan*, 504 U.S. at 560–561. Law enforcement simply spoke with Mrs. Morris about the incident, asked her permission to search her vehicle, and, after Mrs. Morris consented, searched her vehicle. *See* Dkt. 117, at ¶¶ 26–27. There is no evidence her "civil rights were violated in front of her husband and children," that she "suffered emotional distress," or that she had to "go back and forth to court for over a year," as she argues. *See* Dkt. 120, at 13. Thus, the Court grants Rockford and Officer Farmer's motion for summary judgment as to Mrs. Morris intentional infliction of emotional distress and failure to intervene claims. Dkt. 85. at ¶¶ 71–79, 80–85, 195–99.

For the following reasons, the Court grants Rockford and Officer Farmer's motion for summary judgment as to the remaining claims, as well. Dkt. 115.

I. False Arrest/Unlawful Detention and Malicious Prosecution

Mr. and Mrs. Morris bring a claim of false arrest/unlawful detention[1] under 42 U.S.C. § 1983 against Officer Farmer and bring malicious prosecution claims under Illinois state law against both Rockford and Officer Farmer. *See* Dkt. 85, at ¶¶ 52–55, 66–70. Mr. Morris was arrested and charged with mob action and UUW. Dkt. 117, at ¶ 42. Both the false arrest/unlawful detention and the malicious prosecution claim turn on the presence or absence of probable cause. *See Braun v. Village of Palatine*, 56 F.4th 542, 550–51 (7th Cir. 2022); *Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009). If there is probable cause to arrest a defendant for any offense, a false arrest/unlawful detention claim cannot succeed. *Sroga v. Weiglen*, 649 F.3d 604, 608 (7th Cir. 2011). Similarly, if there is probable cause to charge the defendant for each of the charges brought, a malicious prosecution claim cannot succeed. *Holmes v. Village of Hoffman Estate*, 511 F.3d 674, 682–84 (7th Cir. 2007).

Probable cause does not deal in absolutes. *See Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). "As the term suggests," it deals with "probabilities." *Id.* It "requires something more than a hunch" and less than a "finding that it was more likely than not that the arrestee engaged in criminal activity." *Id.* For an arrest, probable cause exists when the "totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit

---

[1] As the Court discussed in its October 13, 2022, Order, the "false arrest/unlawful detention" claim refers to the "circumstances involving the initial detention and full arrest." Dkt. 101, at 8. To date, neither party has disputed this characterization.

a crime." *Id.* at 714. In the context of a prosecution, it exists when "a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged." *Fabiano v. Palos Hills*, 784 N.E.2d 258, 266 (Ill. App. Ct. 2002).

Turning to the criminal statutes at issue, in Illinois, a person commits the offense of mob action when he engages in the "knowing or reckless use of force or violence disturbing the public peace by 2 or more persons acting together and without authority of law." 720 ILCS 5/25-1(a)(1). The person must be "part of a group engaged in physical aggression reasonably capable of inspiring fear of injury or harm." *In re B.C.*, 680 N.E.2d 1355, 1362 (Ill. 1997). UUW prohibits an individual from knowingly carrying certain firearms in "any" vehicle, unless the firearm is: (1) "broken down in a non-functioning state"; (2) "not immediately accessible"; (3) "unloaded and enclosed" in a case; or (4), "carried or possessed in accordance with the Firearm Concealed Carry Act by a person who has been issued a currently valid license under the Firearm Concealed Carry Act." 720 ILCS 5/24-1(a)(4).

With respect to the false arrest/unlawful detention claim, Mr. Morris and Mr. Clark, two coaches from the same team, accosted the coach from the opposing team. Dkt. 85, at ¶¶ 11, 16, 21. There was a "large fight," and when a gun was drawn, the crowd scattered, indicating that their use of force or violence was reasonably likely to inspire fear of injury or harm. *See* 720 ILCS 5/25-1(a)(1); *In re B.C.*, 680 N.E.2d at 1362; Dkt. 85, at ¶ 12. Under these circumstances, a reasonable and prudent person would believe that Mr. Morris committed mob action, and thus, there was probable

11

cause to arrest him. *Abbott*, 705 F.3d at 713. Because probable cause existed for this offense, Mr. Morris' false arrest/unlawful detention claim fails as a matter of law. *Bianchi*, 818 F.3d at 322.

As for the malicious prosecution claims, Mr. Morris was charged with two offenses: mob action and UUW. Dkt. 117, at ¶ 42. For the same reasons as above, there was probable cause to charge Mr. Morris with mob action. As for the UUW charge, in this case, Mrs. Morris told law enforcement that her husband, Mr. Morris, had an Indiana concealed-carry permit, and that there was a firearm in the glovebox. Dkt 117, at ¶ 27. After getting Mrs. Morris' consent, Officer Roser searched the glove compartment of her Acura, where Officer Roser found a loaded, chambered gun in a cloth holster. Dkt. 117 at ¶ 28. The firearm was immediately accessible and loaded but was not broken down or "carried or possessed in accordance with the Firearm Concealed Carry Act." Mr. and Mrs. Morris possessed the burden on the issue of probable cause. *Martinez v. Chi.*, 900 F.3d 838, 846 (7th Cir. 2018). They have failed. And this is after Officer Farmer and Rockford established that probable cause existed. *Celotex*, 477 U.S. at 324. There was at least an "honest and sound suspicion" that the Mr. Morris had committed the offense of unlawful use of a firearm. *Fabiano*, 784 N.E.2d at 266; 720 ILCS 5/24-1(a)(4). Accordingly, Mr. and Mrs. Morris' malicious prosecution claims fail.

That summary judgment is appropriate on the Fourth Amendment and malicious prosecution claims are established in two other ways. First, the assistant state's attorney approved the charges. *Kijonka v. Seitzinger*, 363 F.3d 645, 648 (7th

12

Cir. 2004) (officer entitled to qualified immunity when relying upon advice of prosecutor). Second, the grand jury returned an indictment. *Colbert v. Chi.*, 851 F.3d 649, 655 (7th Cir. 2017) (grand jury indictment defeats malicious prosecution claim).

> II. Intentional Infliction of Emotional Distress

To succeed on an intentional infliction of emotional distress claim in Illinois, the plaintiff must satisfy three elements: "(1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress and (3) the conduct must in fact cause severe emotional distress." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir.2001). The defendant's conduct "must extend beyond the bounds of human decency and be considered intolerable in a civilized community." *Lewis v. School Dist. #70*, 523 F.3d 730, 747 (7th Cir. 2008)).

There is no evidence that Officer Farmer or Rockford departed from the "bounds of human decency" or engaged in "truly extreme and outrageous behavior." *Lewis*, 523 F.3d at 747; *Honaker*, 256 F.3d at 490. Indeed, law enforcement lawfully arrested and prosecuted Mr. Morris for his actions, vitiating his claim that officers acted beyond the standards that a civilized community would tolerate. *McDade v. Stacker*, 106 Fed. Appx. 471, 475 (7th Cir. 2004); *see Lewis*, , 523 F.3d at. What's more, there is no evidence suggesting that Mr. Morris suffered "severe" emotional distress, let alone any emotional distress. *See* Dkt. 117. Mr. Morris' intentional infliction of emotional distress claims, therefore, cannot succeed.

### III. Due Process

Mr. Morris argues that Officer Farmer violated his due process rights under the Fourteen Amendment when he unlawfully detained Mr. Morris and presented false evidence to the prosecutors. *See* Dkt. 120, at 5–6. Besides the fact that Mr. Morris was not unlawfully detained and that there is no evidence that Officer Farmer presented false evidence to the prosecutors, Mr. Morris' claim fails for two additional reasons. First, claims concerning pretrial detention rest with the Fourth Amendment, not the Fourteenth. *Young v. Chi.*, 987 F.3d 641, 645–46 (7th Cir. 2021); *Lewis v. Chi.*, 914 F.3d 472, 478–80 (7th Cir. 2019). Second, a due process claim cannot succeed when the alleged violation did not result in a conviction. *Stubbs v. Chi.*, 616 F. Supp. 3d 793, 800–01 (N.D. Ill. 2022). Because Mr. Morris was a pretrial detainee and was never convicted, his due process claim fails. *Young*, 987 F.3d at 645–46; *Lewis*, 914 F.3d at 478–80; *Stubbs*, 616 F. Supp. 3d at 800–01.

### IV. Conspiracy and Failure to Intervene

There can be no conspiracy "where there are no underlying intentional torts that defendants could have conspired to perform." *Farwell v. Senior Servs. Assocs., Inc.*, 970 N.E.2d 49, 58 (Ill. App. Ct. 2012). Because the false arrest/unlawful detention, malicious prosecution, and intentional infliction of emotional distress claims against Rockford and Officer Farmer fail, the conspiracy claim must do the same. *Id.* Likewise, "in order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). Because there are no underlying constitutional violations, Mr. Morris' failure to intervene claim fails.

## CONCLUSION

For the foregoing reasons, the Court grants Rockford and Officer Farmer's motion for summary judgment. Dkt. 115. All claims having been resolved between all parties, the Court instructs the Clerk to terminate this case.

Date: July 24, 2023

_____
Honorable Iain D. Johnston
United States District Judge